IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY
CORPORATION, *et al.*,

      Plaintiffs

v.

WHITEPAGES, INC., *et al.*,

      Defendants.

No.

## <u>NOTICE OF REMOVAL</u>

## **TABLE OF CONTENTS**

**Page**

D.N.J. LOCAL RULE 10.1 STATEMENT..............................................................1

NOTICE OF REMOVAL ...................................................................................2

INTRODUCTION ............................................................................................2

LEGAL STANDARD........................................................................................3

DIVERSITY JURISDICTION .............................................................................4

    (a)    Complete diversity exists ...................................................5

        (1)    Whitepages's citizenship ........................................5

        (2)    Plaintiffs' citizenship ...........................................5

    (b)    The amount in controversy exceeds $75,000 .....................14

        (1)    Actual/statutory damages.......................................16

        (2)    Punitive damages ................................................19

        (3)    Attorneys' fees .................................................22

        (4)    Injunctive relief ...............................................23

28 U.S.C. § 1446 REQUIREMENTS....................................................................26

    (a)    Removal is timely................................................26

    (b)    Removal to proper court..........................................26

    (c)    Pleadings and process............................................27

    (d)    Notice to state court............................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Andrews v. Home Depot U.S.A., Inc.*,
  2010 WL 5464303 (D.N.J. Dec. 29, 2010)........................................................22

*Atlas Data Privacy Corporation, et al. v. Enformion, LLC*,
  Case No. BER-L-000767-24 (Bergen County, NJ) ............................................9

*Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*,
  Case No. MRS-L-000224-24 (Morris County, NJ) ............................................9

*Atlas Data Privacy Corporation, et al. v. New Jersey Property
  Records, LLC*, Case No. MID-L-000811-24 (Middlesex County,
  NJ) ......................................................................................................................9

*Atlas Data Privacy Corporation, et al. v. Pipl, Inc.*,
  Case No. MON-L-000481-24 (Monmouth County, NJ) .....................................9

*Atlas Data Privacy Corporation, et al. v. Whitepages, Inc.*,
  Case No. MER-L-000270-24 (Mercer County, NJ) ...........................................9

*Attorneys Trust v. Videotape Computer Products, Inc.*,
  93 F.3d 593 (9th Cir. 1996) ...................................................7, 8, 9, 11

*Burgess v. Bennet*,
  2021 WL 1050313 (D.N.J. Mar. 19, 2021) ......................................................14

*Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*,
  813 F. Supp. 2d 242 (D. Mass. 2011)................................................................11

*Ciccone v. Progressive Specialty Ins. Co.*,
  2020 WL 7319777 (M.D. Pa. Dec. 11, 2020) ..................................................23

*Columbia Gas Transmission Corp. v. Tarbuck*,
  62 F.3d 538 (3rd Cir. 1995) ..............................................................................24

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014).....................................................................3, 4, 14

*Dozier v. E. Mfg. Corp.*,
2020 WL 3068191 (D.N.J. June 8, 2020) ............................................................5

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
545 U.S. 546 (2005) .........................................................................................14

*Farrell v. FedEx Ground Package Sys., Inc.*,
478 F. Supp. 3d 536 (D.N.J. 2020) .....................................................................3

*Gentle v. Lamb-Weston, Inc.*,
302 F. Supp. 161 (D. Me. 1969) ........................................................................12

*Golden ex rel. Golden v. Golden*,
382 F.3d 348 (3rd Cir. 2004) ............................................................................19

*Grace v. T.G.I. Fridays, Inc.*,
2015 WL 4523639 (D.N.J. July 27, 2015) ............................................................3

*Granovsky v. Pfizer, Inc.*,
631 F. Supp. 2d 554 (D.N.J. 2009) ....................................................................21

*Grassi v. Ciba-Geigy, Limited*,
894 F.2d 181 (5th Cir. 1990) ...........................................................8, 10, 11, 13

*Hagenbaugh v. Nissan N.A.*,
2022 WL 676277 (M.D. Pa. Mar. 7, 2022) .........................................................13

*Huber v. Taylor*,
532 F.3d 237 (3rd Cir. 2008) ............................................................................19

*Hunt v. Washington Apple Advertising Comm'n*,
432 U.S. 333 (1977) .........................................................................................24

*Ifill v. CVS Pharmacy*,
2021 WL 486884 (D.N.J. Feb. 9, 2021) ..............................................................21

*JMTR Enterprises, L.L.C. v. Duchin*,
42 F. Supp. 2d 87 (D. Mass. 1999) ....................................................................11

*Johnson v. State Farm Life Ins. Co.*,
695 F. Supp. 2d 201 (W.D. Pa. 2010) .................................................................20

*Karnes v. Kankakee Hospitality, LLC*,
   2021 WL 12171751 (C.D. Ill. Sept. 25, 2021) ...................................................17

*Kramer v. Caribbean Mills, Inc.*,
   394 U.S. 823 (1969)...........................................................................................10

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
   800 F.3d 99 (3d Cir. 2015) .............................................................................5, 13

*Matthews v. Bank of America Corp.*,
   2020 WL 9786649 (D.N.J. Feb. 18, 2020) ..........................................................4

*Mithril GP Emp. Feeder LLC v. McKellar*,
   2020 WL 3206555 (D. Del. June 15, 2020) .......................................................13

*NPD Management and Building Services, Inc. v. Geismar North*
   *America, Inc.*, 2021 WL 5231870 (E.D. La. Nov. 10, 2021) .......................11, 13

*Papp v. Fore-Kast Sales Co., Inc.*,
   842 F.3d 805 (3d Cir. 2016) .................................................................................4

*Peatry v. Bimbo Bakeries USA, Inc.*,
   393 F. Supp. 3d 766 (N.D. Ill. 2019)..................................................................17

*Quinones-Velazquez v. Maroulis*,
   677 Fed. App'x 801 (3rd Cir. 2017) ...................................................................19

*Raspa v. Home Depot*,
   533 F. Supp. 2d 514 (D.N.J. 2007) ....................................................................21

*Rodriguez v. Burlington County Corrections Dept.*,
   2015 WL 790521 (D.N.J. Feb. 25, 2015) ..........................................................23

*Schor v. State Farm Fire and Cas. Ins. Co.*,
   2015 WL 1230200 (E.D. Pa. March 18, 2015)...................................................16

*Strawbridge v. Curtiss*,
   7 U.S. 267 (1806).................................................................................................5

*Suber v. Chrysler Corp.*,
   104 F.3d 578 (3rd Cir. 1997) .............................................................................22

*Tarr v. Ciasulli*,
  853 A.2d 921 (N.J. 2004) ...................................................................18

*Texas Eastern Transmission Corp. v. Giannaris*,
  818 F. Supp. 755 (M.D. Pa. 1993)......................................................25

*USAA Casualty Ins. Co. v. CIT Bank*,
  2018 WL 3213324 (D.N.J. May 15, 2018)..........................................24

*Vaccaro v. Amazon.com.dedc, LLC*,
  2019 WL 1149783 (D.N.J. Mar. 13, 2019) ...........................................3

*Valenta v. BI Inc.*,
  2021 WL 7185785 (W.D. Pa. Oct. 8, 2021)........................................20

*Venuto v. Atlantis Motor Grp., LLC*,
  2017 WL 4570283 (D.N.J. Oct. 13, 2017) ..........................................22

*Witkowski v. Int'l Broth. of Boilermakers*,
  404 Fed. App'x 674 (3rd Cir. 2010) ...................................................19

*Yucis v. Sears Outlet Stores, LLC*,
  813 Fed. App'x 780 (3rd Cir. 2020) .............................................14, 18

**Statutes**

28 U.S.C. § 1332 ....................................................................*passim*

28 U.S.C. § 1367 ............................................................................14

28 U.S.C. § 1441 ..............................................................................2

28 U.S.C. § 1446 ....................................................................*passim*

N.J.S.A. 2A:15-5.14 ................................................................20, 21

N.J.S.A. 40A:14-122.8 ..........................................................6, 7, 12

N.J.S.A. 47-1A-1, *et seq.* .................................................................2

N.J.S.A. 52:14-7 ........................................................................6, 12

N.J.S.A. 56:8-166.1 ................................................................*passim*

## Other Authorities

13F Fed. Prac. & Proc. Juris. § 3641 (3d ed.)..........................................7, 8, 11, 12

Fed. R. Civ. P. 8(a).............................................................................................3

H.R. Rep. No. 100-889 (1988), as reprinted in 1988 U.S.C.C.A.N.
    5982....................................................................................................................4

## D.N.J. LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and Peter Andreyev. The address for Atlas Data Privacy Corporation is Five Greentree Centre, 525 Route 73, Suite 104, Marlton, New Jersey 08053. The remaining addresses are unknown to defendant Whitepages, Inc. ("Whitepages"), which is filing this Notice of Removal. Whitepages is unable to locate the precise addresses of plaintiffs Jane Doe-1 and Jane Doe-2, whose identities are unknown. And Whitepages is unable to locate the precise addresses of the remaining individual plaintiffs who, as is set forth in their Complaint, are law enforcement officers who have availed themselves of New Jersey laws to conceal their addresses. Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07012, John A. Yanchunis, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602, and Mark Mao, Esq. of Boies Schiller Flexner LLP, 44 Montgomery St., 41st Floor, San Francisco, CA 94104.

The defendant in this action is Whitepages, 900 First Avenue S., Suite 201, Seattle, WA 98104. Whitepages is represented by Jean A. Occhiogrosso, Esq. of Vedder Price P.C., 1633 Broadway, 31st Floor, New York, NY 10019, and Blaine

C. Kimrey, Esq., and Bryan K. Clark, Esq., of Vedder Price P.C., 222 N. LaSalle St., Chicago, IL 60601.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant Whitepages, Inc. removes to the United States District Court, District of New Jersey the above-styled action, pending as Case No. MER-L-000270-24 in the Superior Court of New Jersey, Law Division, Mercer County (the "State Court Action").  In support, Whitepages states the following:

## INTRODUCTION

On February 6, 2024, plaintiffs Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and Peter Andreyev (collectively, "Plaintiffs") commenced the State Court Action against Whitepages.  A copy of Plaintiffs' Complaint (the "Complaint") is included in the attached **Exhibit A**.  Plaintiffs purport to bring claims against Whitepages for alleged violation of Daniel's Law (N.J.S.A. 47-1A-1, *et seq.*, and N.J.S.A. 56:8-166.1), claiming that Whitepages has failed to cease making available the home addresses or unpublished home telephone numbers of covered persons upon request pursuant to the statute.  The "covered persons" specifically identified in the Complaint are all law enforcement officers.

Plaintiff Atlas also purports to assert claims on behalf of *18,976* unidentified judges, law enforcement officers, prosecutors, and their family members who allegedly have assigned their claims against Whitepages to Atlas.    Compl. ¶ 25. This Notice of Removal is based primarily on the allegations of the Complaint and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiffs' claims, or the entitlement to any form of relief.    Rather, Whitepages expressly denies that Plaintiffs are entitled to any relief.

## **LEGAL STANDARD**

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "Thus, the grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)." *Grace v. T.G.I. Fridays, Inc.*, 2015 WL 4523639, at *3 (D.N.J. July 27, 2015) (citing *Dart Cherokee*, 135 S. Ct. at 553).  "No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court." *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) (citing *Dart Cherokee*, 135 S. Ct. at 553); *see also Vaccaro v. Amazon.com.dedc, LLC*, 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019).

Where, as here, state practice does not require the demand of a specific sum of damages, the notice of removal may state the amount in controversy in the first instance. *See* 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 574 U.S. at 84 (2014). "Just like the complaint, a notice of removal need only contain 'a short and plain statement of the grounds for removal.'" *Matthews v. Bank of America Corp*., 2020 WL 9786649, at *3 (D.N.J. Feb. 18, 2020) (citing 28 U.S.C. § 1446(a)). "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Dart Cherokee*, 574 U.S. at 87 (alteration in original) (quoting H.R. Rep. No. 100-889, at 71 (1988), as reprinted in 1988 U.S.C.C.A.N. 5982, 6031-32); *see also Papp v. Fore-Kast Sales Co., Inc*., 842 F.3d 805, 811 (3d Cir. 2016) ("Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach.").

## **DIVERSITY JURISDICTION**

Whitepages is entitled to removal of the State Court Action pursuant to 28 U.S.C. § 1332(a). Section 1332(a) vests the United States District Courts with original jurisdiction when (1) the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000.

**(a)    Complete diversity exists.**

For diversity jurisdiction to exist under Section 1332, there must be "complete" diversity — i.e., all plaintiffs must be of different citizenship than all defendants. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).  There is complete diversity in this case, as set forth below.

**(1)    Whitepages's citizenship**

Whitepages is a Delaware corporation with its principal place of business in Washington.[1]  It is thus ***not*** a citizen of New Jersey and is instead a citizen of Washington and Delaware.  28 U.S.C. § 1332(c)(1).[2]

**(2)    Plaintiffs' citizenship**

The plaintiffs are all citizens of New Jersey, as elaborated on below:

- The Complaint alleges that Jane Doe-1 is a police officer working in northern New Jersey.  Compl. ¶ 15.  As a matter of New Jersey law, "[e]very member of a police department and force shall be a resident of

---

[1] Whitepages's corporate registration is attached as **Exhibit B**.  Whitepages is headquartered in Seattle, Washington.  *See* https://www.whitepages.com/terms-of-service.

[2] Plaintiffs also named fictitious individuals and companies as defendants.  Fictitious defendants are disregarded when assessing a notice of removal.  *See, e.g., Dozier v. E. Mfg. Corp.*, 2020 WL 3068191, at *1 (D.N.J. June 8, 2020).

the State of New Jersey while serving in such position."  N.J.S.A. 40A:14-122.8.[3]  Accordingly, Jane Doe-1 is a citizen of New Jersey.

- The Complaint alleges that Jane Doe-2 is a correctional police officer who lives in northern New Jersey.  Compl. ¶ 16.  Accordingly, Jane Doe-2 is a citizen of New Jersey.

- Maldonado is an officer in the Plainfield, New Jersey Police Department and is therefore a New Jersey citizen.  Compl. ¶ 17; N.J.S.A. 40A:14-122.8.

- Rahway, New Jersey police officers Scott Maloney and Justyna Maloney are a married couple who "live together in New Jersey with their two young children."  Compl. ¶ 18.  Accordingly, they are New Jersey citizens.

---

[3] This statute does not define "residency."  But the definition of "residency" is addressed in a separate residency requirement that covers "[e]very person holding an office, employment, or position in . . . the Executive, Legislative, or Judicial Branch of this State, . . . with an authority, board, body, agency, commission, or instrumentality of the State, [or] . . . with a county, municipality, or other political subdivision of the State."  N.J.S.A. 52:14-7a.  That statute establishes that "residency" is akin to citizenship, requiring New Jersey to be the individual's "principal residence," meaning "the state (1) where the person spends the majority of the person's nonworking time, and (2) which is most clearly the center of the person's domestic life, and (3) which is designated as the person's legal address and legal residence for voting."  *Id.*  Notably, Daniel's Law also covers judges and prosecutors who would be subject to this requirement.

- Cooligan is a veteran of the Franklin Township Police Department in Somerset, New Jersey and is therefore a New Jersey citizen. Compl. ¶ 22; N.J.S.A. 40A:14-122.8.

- Andreyev is a veteran of the Point Pleasant, New Jersey Police Department and is therefore a New Jersey citizen. Compl. ¶ 23; N.J.S.A. 40A:14-122.8.

Plaintiff Atlas operates in New Jersey but is incorporated in Delaware. Compl. ¶ 24. Although Atlas is, like Whitepages, registered in Delaware, Atlas's Delaware registration is immaterial to the diversity of citizenship analysis because Atlas is a mere purported assignee of claims by New Jersey citizens. *See* Compl. ¶ 25; 13F Fed. Prac. & Proc. Juris. § 3641, 3 (3d ed.) ("Wright & Miller") ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction."). Given that Atlas likely is a ***partial*** assignee, with some rights (financial, injunctive, or otherwise) still held by the assignors as the true claimants, *see* Compl., Prayer for Relief (requesting relief on behalf of covered persons that would not benefit Atlas), courts throughout the United States likely would disregard Atlas's citizenship in assessing diversity. *See, e.g., Attorneys Trust v. Videotape Computer Products, Incorporated*, 93 F.3d 593,

597 (9th Cir. 1996) (holding that courts are "sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *see also Grassi v. Ciba-Geigy, Limited*, 894 F.2d 181, 185 (5th Cir. 1990).  And in the unlikely event that Atlas is a complete assignee, the trend is for courts to look at and behind the pleadings to determine whether an assignee's citizenship should be deemed collusive and disregarded as inconsequential to the diversity analysis.  *See Attorneys Trust*, 93 F.3d at 600 (holding that courts "may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction"); Wright & Miller at 2 (stating that the courts should "exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising their authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction").

The timeline of events shows that Atlas is a *de facto* contingent fee/litigation finance vehicle formed solely to serve as a litigation tool for Daniel's Law claimants, Atlas's investors, and the lawyers representing Atlas at the Genova Burns, LLC, Boies Schiller Flexner LLP, and Morgan & Morgan law firms.  Atlas did not exist when Daniel's Law was passed in November 2020, but it incorporated in Delaware just five months later.  *See* **Exhibit C**.  Then, in 2023, Genova Burns registered as a lobbyist for Atlas in New Jersey, pushing for amendments to Daniel's Law to

specifically address assignments.  *See* **Exhibit D**, at p. 5.  Daniel's Law was amended on July 20, 2023, purportedly to allow claim assignments.  *See* N.J.S.A. 56:8-166.1b, d.  Presumably thereafter, the purported assignments occurred.  *See* Compl. ¶ 24.

On December 21, 2023, Atlas allegedly began sending more than 18,976 Daniel's Law requests to Whitepages, as part of a campaign to end thousands of requests to more than 130 businesses.  Yet Atlas did not even register to do business in the state of New Jersey until January 12, 2024.[4]

Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit, with its lobbying firm signing on as Plaintiffs' counsel.  *See generally* Compl.  It could not be clearer that Atlas exists solely to obtain these collusive assignments and cash in on New Jersey's efforts to protect public officials through Daniel's Law.  Courts in such situations do not hesitate to disregard an entity like Atlas's citizenship in assessing diversity jurisdiction.  *See, e.g., Attorneys Trust*, 93

---

[4] Atlas's registration to do business in New Jersey is attached as Exhibit C.  The 130 companies that Atlas has sued are listed in five consolidation motions filed by Atlas on March 12, 2024 in *Atlas Data Privacy Corporation, et al. v. Pipl, Inc.*, Case No. MON-L-000481-24 (Monmouth County, NJ); *Atlas Data Privacy Corporation, et al. v. New Jersey Property Records, LLC*, Case No. MID-L-000811-24 (Middlesex County, NJ); *Atlas Data Privacy Corporation, et al. v. Melissa Data Corp.*, Case No. MRS-L-000224-24 (Morris County, NJ); *Atlas Data Privacy Corporation, et al. v. Enformion, LLC*, Case No. BER-L-000767-24 (Bergen County, NJ); *Atlas Data Privacy Corporation, et al. v. Whitepages, Inc.*, Case No. MER-L-000270-24 (Mercer County, NJ).

F.3d at 595 (disregarding an entity's citizenship when there was "an assignment in name only" that "tampers with the jurisdiction of the court by artificially affecting it"); *Grassi*, 894 F.2d at 182 (disregarding an entity's citizenship when it had "no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney").  This Court likewise should disregard Atlas's Delaware registration here in assessing diversity jurisdiction.

The court's handling of an assignment that allegedly destroyed diversity in *Grassi* is instructive.  There, the plaintiffs filed a state court case, the defendant removed, and the plaintiffs sought remand, arguing that a partial assignment of the plaintiffs' claims to a non-diverse party destroyed diversity.  *Id.*  The Fifth Circuit affirmed denial of remand, holding that district courts have "both the authority and responsibility . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal."  *Id.* at 185.  This approach is consistent with the Supreme Court's handling of assignments that were used to **create** federal jurisdiction — just as assignments must be scrutinized so that a "vast quantity of ordinary contract and tort litigation [is not] channeled into the federal courts at the will of one of the parties," *Kramer v. Caribbean Mills, Inc*., 394 U.S. 823, 828-29 (1969), so too must the Court scrutinize collusive assignments designed

to deprive the Court of jurisdiction.  *Grassi*, 894 F.2d at 183.  The power to engage in this analysis falls within the Court's "inherent authority to look beyond the pleadings in order to protect a litigant's right to diversity jurisdiction."  *Id*.  And the effectiveness of the assignment should "be judged in accordance with federal, not state, standards."  Wright & Miller at 4.

Like *Grassi*, *Attorneys Trust* involved a scenario where a collusive assignment was designed to destroy jurisdiction.  The court noted that in those situations, the assignee is nothing more than a "strawman" and "there is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner."  *Id.* at 598; *see also NPD Management and Building Services, Inc. v. Geismar North America, Inc.*, 2021 WL 5231870, *3 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244 (D. Mass. 2011) ("The Court must examine and disregard an assignment 'if it be found to have been made principally to defeat removal.'"); *JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 93 (D. Mass. 1999) ("Under these circumstances, the assignment of this fractional interest should not have the effect of depriving . . . the noncitizen, of the federal forum which

11

Congress has provided."); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166 (D. Me. 1969) (finding that diversity was not defeated where the assignments were made to defeat an anticipated removal).

Although courts have sometimes drawn a distinction between partial and complete assignments, Wright & Miller at 4, and the Complaint does not specify whether all assignments at issue here were partial or complete, Whitepages plausibly alleges here that the assignments likely were partial because the 18,976 assignors are unlikely to have assigned their rights (including to financial recovery and to injunctive relief to their benefit) completely to Atlas.  Compl. ¶ 25; Prayer for Relief.

From the face of the pleadings and under the applicable legal standard, *supra* p. 3, it's clear that Atlas's citizenship should be disregarded, that diversity of citizenship exists, and that removal is proper.  And to the extent the Court believes that the citizenship of the 18,976 assignors is relevant to the diversity analysis, Whitepages notes that all of the assignors purportedly are "covered persons" under Daniel's Law who should, pursuant to New Jersey law, be citizens of New Jersey. *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7a.  Moreover, nothing in the Complaint suggests that any of the assignors is a citizen of Delaware or Washington, where Whitepages is a citizen.

And if the Court nevertheless still questions diversity of citizenship, it should — **before** ruling on any motion to remand — order discovery of Atlas related to the

factors relevant to the diversity analysis under *Grassi* and its progeny (such as the size of the interest assigned, whether the assignee had any interest in the matter before the assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant). *See* 894 F.2d at 186; *NPD Management*, 2021 WL 5231870 at *4 ("[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive."). That discovery should include production of the 18,976 assignment agreements themselves, as well as depositions of a sampling of the Daniel's Law claimants, related to the fact that the assignments to a Delaware-registered corporation formed solely for purposes of this litigation were, in fact, collusive to try to destroy diversity jurisdiction in this litigation. Courts routinely permit jurisdictional discovery to determine if assignments were made for the purpose of avoiding federal jurisdiction. *See, e.g., Lincoln Ben. Life Co.*, 800 F.3d at 108 (district courts can order jurisdictional discovery); *Hagenbaugh v. Nissan N.A.*, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing a removing defendant take to jurisdictional discovery because the plaintiff challenged allegations in the notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

Complete diversity of citizenship in this case supports removal jurisdiction.

**(b)     The amount in controversy exceeds $75,000.**

The second requirement of traditional diversity of citizenship jurisdiction is that the amount in controversy exceed $75,000.  *See* 28 U.S.C. § 1332(a).  When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782 n.2 (3rd Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 89).  Only a single plaintiff need satisfy the requirement — the Court can then exercise supplemental jurisdiction over any other plaintiffs, regardless of the value of their claims.  "[W]here the other elements of [diversity] jurisdiction are present and ***at least one*** named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 549 (2005) (emphasis added); *see also Burgess v. Bennet*, 2021 WL 1050313, at *5 n. 9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount,

this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.").

Atlas, standing alone, satisfies the required amount in controversy. Atlas purports to bring claims on behalf of 18,976 of assignors. Compl. ¶ 25. Daniel's Law provides for damages of at least $1,000 for each violation of the statute. *See* N.J.S.A. 56:8-166.1c(1). This means that Atlas's claims for statutory damages alone potentially amount to more than $18,976,000, far in excess of the $75,000 threshold.

Atlas might argue that Whitepages doesn't get to benefit from assignment aggregation in light of Whitepages's argument that Atlas's citizenship should be disregarded in assessing diversity jurisdiction. In so arguing, Atlas would be wrong. Diversity of citizenship is a concept distinct from the amount in controversy, and Atlas should not be allowed to aggregate collusively Daniel's Law claims via assignment to it as a single plaintiff while arguing that aggregation should be disregarded for purposes of the amount in controversy. Moreover, Whitepages does not argue here (but reserves the right to do so later) that the assignments are invalid — only that they should be disregarded in assessing citizenship. Based on the Complaint's allegations about the assignments, Atlas is a single plaintiff with claims valued at more than $18,976,000. In light of that, the Court can exercise traditional diversity jurisdiction over Atlas and supplemental jurisdiction over the other plaintiffs.

But even if that weren't the case and Atlas were disregarded not only in the citizenship analysis but also in the amount in controversy analysis, the individual plaintiffs each, on their own, satisfy the amount in controversy requirement. Every individual plaintiff seeks (1) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief." Compl., Prayer for Relief. Adding together potential statutory, actual, and punitive damages, as well as the value of injunctive relief and attorneys' fees, each Plaintiff has put far more than $75,000 in controversy.

### (1) Actual/statutory damages

Daniel's Law states that the Court may award "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act." N.J.S.A. 56:8-166.1c(1). Thus, each individual plaintiff has placed at least $1,000 in damages at issue.

But while Whitepages denies that Plaintiffs have adequately pled or could establish any violation of the law or corresponding damages — and the arguments herein cannot, and should not, be construed as conceding liability or damages, *see Schor v. State Farm Fire and Cas. Ins. Co.*, 2015 WL 1230200, at *4 n. 1 (E.D. Pa. March 18, 2015) — the Complaint can plausibly be read to assert that multiple

violations of Daniel's Law have occurred for each individual plaintiff.  Plaintiffs

allege that a violation occurred due to the disclosure of each covered person's (1)

home address and (2) unlisted home telephone number.  Compl. ¶¶ 28, 39, 53-54,

58-63.  In addition, the Complaint alleges that violations occurred through three

types of disclosure:  (1) disclosure on the Internet, (2) re-disclosure on the Internet

and  (3) otherwise making protected information available.  *Id*.  Moreover, because

Daniel's Law references "$1,000 for each violation of this act" without any

definition of a "violation," and because no case law exists interpreting a "violation"

under Daniel's Law, the Complaint can be read to plausibly allege (although

Whitepages disputes this) that each plaintiff suffered a new violation each time that

Whitepages allegedly did not comply with Daniel's Law.  *See, e.g., Karnes v.*

*Kankakee Hospitality, LLC*, 2021 WL 12171751, at *3-*4 (C.D. Ill. Sept. 25, 2021)

(denying a motion to remand in a case under the Illinois Biometric Information

Privacy Act ("BIPA") where the plaintiff plausibly alleged more than $75,000 in

controversy based on allegations that plaintiff was employed by the defendant for

35 days and had daily collection of her biometrics); *Peatry v. Bimbo Bakeries USA,*

*Inc.*, 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019) (denying a motion to remand and

holding that the plaintiff plausibly alleged more than $75,000 in damages because

the plaintiff's complaint and BIPA "together can plausibly be read to suggest that a

violation of at least some of the BIPA provisions at issue allegedly occurred every

time [plaintiff] and the putative class members clocked in and out of work"). Multiplying these multiple types of alleged violations with multiple days and the $1,000 in liquidated damages, the Complaint plausibly alleges a significant potential award of liquidated damages for each plaintiff.

Moreover, Plaintiffs likely will argue that they suffered actual damages that exceed $1,000. For example, the individual plaintiffs allege that threats caused them to relocate their family homes (Compl. ¶ 17), install camera systems and security alarms (Compl. ¶ 22), train their family members on how to handle attacks (Compl. ¶ 22), and receive counseling (Compl. ¶ 23). To the extent Plaintiffs intend to allege that these are actual damages attributable to violations of Daniel's Law, they are placing at issue claims that exceed the statutory minimum of $1,000 and potentially extend into the tens of thousands of dollars. Courts have recognized that the damages from pain and suffering alleged by plaintiffs can be worth more than $75,000. *See, e.g., Yucis*, 813 Fed. App'x at 782, n. 2 (holding that the plaintiff plausibly alleged more than $75,000 in controversy based on allegations that she experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as incurred attorneys' fees); *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004) (holding that in statutory discrimination cases pursuant to the New Jersey Law Against Discrimination, "which by definition involve[s] willful conduct, the victim may recover all natural consequences of that wrongful conduct, including

emotional distress and mental anguish damages arising out of embarrassment, humiliation, and other intangible injuries"); *see also Witkowski v. Int'l Broth. of Boilermakers*, 404 Fed. App'x 674, 676, 679 (3rd Cir. 2010) (affirming a jury verdict that awarded $109,300 in emotional distress in a case involving statutory claims pursuant to the Age Discrimination in Employment Act and Pennsylvania Human Relations Act).

Thus, the Complaint plausibly alleges that more than $75,000 is at issue for each individual plaintiff, even before punitive damages, attorneys' fees, and injunctive relief come into the calculation.

### (2) Punitive damages

Daniel's Law states that the Court may award "punitive damages upon proof of willful or reckless disregard of the law." N.J.S.A. 56:8-166.1c(2). And Plaintiffs have asked the Court to award such damages for "willful noncompliance." Compl., Prayer for Relief. The Third Circuit has held that claims for punitive damages that are made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3rd Cir. 2008) (quoting *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3rd Cir. 2004) (emphasis omitted)); *see also Quinones-Velazquez v. Maroulis*, 677 Fed. App'x 801, 804 (3rd Cir. 2017) (vacating a district court decision on the grounds that the district

court erred in finding that the plaintiff could not satisfy the amount in controversy because, even if the plaintiff's compensatory damages were only $8,350, the district court failed to consider plaintiff's arguments that factors were present warranting a punitive damages award that could satisfy the amount in controversy).  Thus, given the uncertainty about the outcome, the mere fact that Plaintiffs are seeking punitive damages is dispositive on the amount in controversy question.  *See also Valenta v. BI Inc.*, 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that the amount in controversy was satisfied based on plaintiff's request for punitive damages and rejecting the argument that the amount in controversy could not be satisfied because the plaintiff alleged only $10,000 in compensatory damages based on proceeds of an insurance policy that had already been tendered).

Moreover, to the extent the Court believes it is necessary to do a calculation, N.J.S.A. 2A:15-5.14b establishes that as a matter of New Jersey law, defendants can be liable for punitive damages in amount up to "five times the liability of that defendant for compensatory damages *or $350,000, whichever is greater.*" (Emphasis added).  Thus, by seeking punitive damages under New Jersey law,

Plaintiffs have presumptively placed $350,000 in controversy for each individual plaintiff.

And regardless, any punitive damages multiplier paired with the plausibly alleged actual or statutory damages discussed in the previous section would clearly put each individual plaintiff over the $75,000 threshold.  *See, e.g., Ifill v. CVS Pharmacy*, 2021 WL 486884, at *2-*3, n. 3 (D.N.J. Feb. 9, 2021) (denying a motion to remand on the grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement because plaintiff would need to recover only compensatory damages above $7,500 to bring the total amount above $75,000 and, in any event, "[i]t is possible that a jury could also reasonably award a higher multiplier"); *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 563 (D.N.J. 2009) (addressing the amount in controversy and citing N.J.S.A. 2A:15-5.14(b) in support of the proposition that New Jersey law allows punitive damages up to five times the amount of compensatory damages); *Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) ("Under New Jersey law, Plaintiffs can collect punitive damages of up to five times the compensatory damages. *See* N.J.S.A. § 2A:15–5.14(b). Combined with compensatory damages, the punitive damages will likely bring Plaintiffs' damages in excess of the $75,000 jurisdictional requirement.").  Given that the Complaint plausibly alleges a significant amount of liquidated damages for

each plaintiff, *supra* p. 16, Plaintiffs would only need single-digit punitive damages multipliers to exceed $75,000.

### (3) Attorneys' fees

In addition to actual/statutory damages and punitive damages, Daniel's Law states that the Court may award "reasonable attorney's fees."    N.J.S.A. 56:8-166.1c(3).   "[I]n calculating the amount in controversy, we must consider potential attorney's fees. Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."   *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3rd Cir. 1997) (citation omitted); *see also Venuto v. Atlantis Motor Grp., LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) ("For purposes of calculating the amount in controversy, reasonable attorneys' fees and punitive damages must be counted if they are available under New Jersey state law."); *Andrews v. Home Depot U.S.A., Inc*., 2010 WL 5464303, at *3 (D.N.J. Dec. 29, 2010) ("Plaintiffs also seek punitive damages and attorney's fees, both of which may be aggregated with the compensatory damages when determining the amount in controversy.").

A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is 30 percent of the compensatory and/or

punitive damages.[5]  *See, e.g., Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees in the amount of 30 percent of the total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v. Burlington County Corrections Dept*., 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment.").  As outlined above, the Complaint plausibly alleges compensatory damages and punitive damages that already far exceed the $75,000 threshold for each individual plaintiff.  But if those damages were increased by another 30 percent to account for attorneys' fees, there can be no doubt that the amount in controversy is satisfied.

### (4) Injunctive relief

Finally, the Court can also take into account injunctive relief in determining the amount in controversy because Daniel's Law states that the Court may award "any other preliminary and equitable relief as the court determines to be appropriate."  N.J.S.A. 56:8-166.1c(4).  Plaintiffs ask the Court to enter "equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's law [sic], including the appointment of a qualified independent expert to ensure that

---

[5] The assignment agreements between Atlas and the 18,976 assignees could be relevant to this inquiry, depending on what they say with respect to payment and recovery of fees.

Defendants prospectively maintain compliance with Daniel's Law." Compl., Prayer for Relief.

When a plaintiff in a diversity case seeks injunctive relief, the amount in controversy is determined by "the value of the object of the litigation." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3rd Cir. 1995) (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)). In addressing the value of requested injunctive relief, courts in the Third Circuit focus on the value to the plaintiff. *See USAA Casualty Ins. Co. v. CIT Bank*, 2018 WL 3213324, at *4 (D.N.J. May 15, 2018). Here, there are two aspects to valuing Plaintiffs' requested injunctive relief: (1) the cost of retaining an "independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law," and (2) the value of Whitepages's ongoing compliance with Daniel's Law to the Plaintiffs. The first part of Plaintiffs' requested injunctive relief is more concrete and likely is itself dispositive of the amount in controversy question, even if it were not paired with the compensatory/statutory damages, punitive damages, and attorneys' fees already discussed above. The Complaint can plausibly be read as seeking the retention of an independent computer expert to analyze Whitepages's data, in perpetuity. The type of expert that would do this type of work is likely to charge, at minimum, $400 per hour, meaning that 188 hours of work by this expert alone — with no other relief awarded — would satisfy the amount in controversy.

The value of ongoing compliance with Daniel's Law to the Plaintiffs is harder to quantify, but it is likely even higher. After all, Plaintiffs allege that the alleged presence of their information on Whitepages's Web site exposes them to threats of harassment, violence and murder — it is hard to imagine how Plaintiffs could put a price on their ongoing safety and security. The alleged enormity of the stakes weighs in favor of finding that the amount in controversy requirement is satisfied. For example, in *Texas Eastern Transmission Corp. v. Giannaris*, the defendants sought dismissal, claiming that the amount in controversy was not satisfied by an injunction that sought access to a pipeline to conduct inspections to avoid "catastrophe — both to the environment and human life." 818 F. Supp. 755, 758-59 (M.D. Pa. 1993). The court denied the motion to dismiss, finding that although the "physical and environmental catastrophe that could result from an improperly maintained pipeline is 'merely' speculative," the public interest in safety exceeded the jurisdictional amount. *Id.* at 759. Similarly, the Court should find that the alleged public safety interest in the injunctive relief sought by Plaintiffs exceeds the jurisdictional threshold. And regardless, the injunctive relief sought in the Complaint, when combined with the actual/statutory damages, punitive damages, and attorneys' fees, far exceeds the necessary amount.

Accordingly, Whitepages plausibly pleads here that each plaintiff has an amount in controversy of more than $75,000. Both via Atlas as an alleged

assignee/aggregator of claims and supplemental jurisdiction over the other plaintiffs and via each plaintiff analyzed standing alone, the amount in controversy for diversity jurisdiction is satisfied.

Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## 28 U.S.C. § 1446 REQUIREMENTS

Section 1446 also sets forth certain procedural requirements for removal, all of which are met here.

**(a)    Removal is timely.**

A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable. 28 U.S.C. § 1446(b). This case was filed on February 6, 2024, and served upon Whitepages on February 27, 2024. (*See* Exhibit A.) This Notice of Removal is thus timely filed.

**(b)    Removal to proper court**

This Court is part of the "district and division within which" this action was filed — Mercer County, New Jersey. 28 U.S.C. § 1446(a).

**(c)    Pleadings and process**

Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Whitepages are attached to this Notice of Removal as Exhibit A. Whitepages has not answered or otherwise filed a response to the Complaint.

**(d)    Notice to state court**

A copy of this Notice of Removal is being filed with the Clerk of the Superior Court of New Jersey, Law Division, Mercer County, and is being served on counsel of record, consistent with 28 U.S.C. §§ 1446(a), (d).

Whitepages hereby reserves all defenses and objections to the Complaint, including but not limited to: lack of personal jurisdiction, improper venue, *forum non conveniens*, insufficiency of process, insufficiency of service of process, failure to join necessary parties, lack of standing, and failure to state a claim.

WHEREFORE, Whitepages, Inc. removes this action to this Court for further proceedings according to law.

Respectfully submitted,

WHITEPAGES, INC.

By:   /s/ Jean A. Occhiogrosso
           One of its attorneys

Jean A. Occhiogrosso (123392014)
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, NY 10019
T: (212) 407-7794
jocchiogrosso@vedderprice.com

Blaine C. Kimrey (PHV to follow)
Bryan K. Clark (PHV to follow)
Vedder Price P.C.
222 N. LaSalle St.
Chicago, IL 60601
T: (312) 609-7500
bkimrey@vedderprice.com
bclark@vedderprice.com


Dated:  March 19, 2024

## <u>CERTIFICATION PURSUANT TO D.N.J. LOCAL RULE 11.2</u>

Pursuant to D.N.J. Local Rule 11.2, it is hereby stated that the matter in controversy between the parties is not subject to any other action pending in any other Court or of a pending arbitration proceeding other than the state court action removed by this Notice: Case No. MER-L-000270-24 in the Superior Court of New Jersey, Law Division, Mercer County.


Dated: March 19, 2024                                    WHITEPAGES, INC.

                                                        By:     /s/ Jean A. Occhiogrosso
                                                        One of its attorneys

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was

served by e-mail and U.S. Mail on March 19, 2024, to:

Genova Burns LLC
Rajiv D. Parikh, Esq.
Kathleen Barnett Einhorn,
Esq.
494 Broad Street
Newark, NJ 07102
T: (973) 533-0777
rparikh@genovaburns.com
keinhorn@genovaburns.com

Morgan & Morgan
John A. Yanchunis, Esq.
201 N. Franklin St., 7th Floor
Tampa, FL 33602
T: (813) 223-5505
jyanchunis@forthepeople.com

Boies Schiller Flexner LLP
Mark Mao, Esq.
44 Montgomery St., 41st Floor
San Francisco, CA 94104
T: (415) 293-6800
mmao@bsfllp.com

/s/ Jean A. Occhiogrosso
Jean A. Occhiogrosso